[Cite as *In re Z.K.*, 2019-Ohio-5096.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: Z.K.

C.A. No.     29453

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 17 02 0108

DECISION AND JOURNAL ENTRY

Dated: December 11, 2019

SCHAFER, Judge.

{¶1}   Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}   Mother is the biological mother of Z.K. (d.o.b. 7/5/15). When the child was a year and a half old, CSB filed a complaint alleging that he was a dependent child based on Mother's drug use and association with people harmful to the well-being of the child. Based on the agreement of the parties, Z.K. was adjudicated dependent and remained in Mother's legal custody under the protective supervision of CSB. Mother was ordered not to permit any contact between the child and two of Mother's associates who were determined to be inappropriate. The juvenile court adopted the agency's case plan which included substance abuse, mental health,

parenting, and basic needs objectives. In addition, alleged fathers were directed to submit to genetic testing to determine the paternity of the child.

{¶3} After several months, CSB moved to modify the child's disposition to temporary custody to the agency based on Mother's daily exposure of the child to her substance-abusing boyfriend, one of the people ordered to have no contact with the child. In late October 2017, the juvenile court placed Z.K. in the temporary custody of CSB and granted Mother supervised visitation with the child twice a week. The child's paternity was established in March 2018, and the juvenile court granted a first six-month extension of temporary custody based on the recent identification of Father. The juvenile court extended temporary custody for a second six-month period based on Father's participation in case plan related services. Twenty-three months after filing its complaint, CSB moved for permanent custody. Mother filed a motion for legal custody. Shortly before the final dispositional hearing, CSB filed a notice indicating that Father had died as a result of a motorcycle accident.

{¶4} After an evidentiary hearing, the juvenile court granted CSB's motion for permanent custody and terminated Mother's parental rights regarding Z.K. Mother filed a timely notice of appeal. The juvenile court granted Mother's motion to stay the judgment pending appeal. Mother raises one assignment of error for consideration.

II.

**Assignment of Error**

**The trial court's decision granting permanent custody of the minor child to [CSB] was against the manifest weight of the evidence.**

{¶5} Mother argues that the juvenile court's award of permanent custody of Z.K. to CSB was against the manifest weight of the evidence. This Court disagrees.

{¶6} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶7} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal

quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶8}    Mother concedes that CSB met its burden of proof regarding the first prong of the permanent custody test and agrees that the child was in the temporary custody of the agency for at least twelve months of a consecutive twenty-two-month period.  The record supports that finding.  As Mother limits her challenge to the juvenile court's determination that an award of permanent custody to CSB was in the child's best interest, this Court likewise limits our review.

Custodial history of the child

{¶9}    Z.K. lived with Mother as an infant.  His older sibling had been placed in the legal custody of a grandmother and did not share the child's home.  When Z.K. was 16 months old, he lived with his grandmother for four months as Mother struggled with issues regarding substance abuse, mental health, and the inability to meet the family's basic needs.  When the child returned to Mother's physical custody at his grandmother's request in February 2017, CSB sought and obtained an order of protective supervision.  In October 2017, CSB obtained temporary custody of Z.K. and placed him in a foster home where he had remained for 21 months as of the date of the permanent custody hearing.  Accordingly, the child spent approximately half of his life in the physical custody of third parties.

Interactions and interrelationships of the child

{¶10}  Z.K. is a very active child given to bouts of aggressive behavior.  Initially in the foster home, the child threw frequent tantrums, broke items, and hit and swore at the foster parents.  Z.K. was discharged from one daycare center due to aggression towards other children. The child and his foster parents work with a counselor to develop and implement parenting strategies to diminish the child's aggression.  The child's counselor was prepared to work with

Mother and the child together during some visits at the Family Interaction Center, but Mother failed to appear for visits on those days. With counseling, consistency, and appropriate parenting techniques by the foster parents, Z.K. has begun to play and share toys with other children. He has stopped cursing and has become more emotionally stable.

{¶11} Z.K. is bonded with Mother. He is always excited to see her, and the two interact well together. The child also has a strong bond with Mother's boyfriend, whom the child recognizes as a father figure. Z.K. has adjusted well to his foster home environment and has a strong bond with both foster parents who are willing to adopt the child. In addition, Z.K. has developed a strong sibling bond with his half-sister who is in the legal custody of her grandmother.

Wishes of the child

{¶12} Z.K. is too young to express his wishes regarding custody. The guardian ad litem recommended that the child be placed in the permanent custody of CSB based on Mother's ongoing substance abuse, resistance to engaging in rehabilitation services, failure to engage in mental health treatment, inability to provide for her or the child's basic needs without help from her boyfriend who also uses drugs, and inconsistency in attending scheduled visits with the child. The guardian ad litem opined that, given the child's young age and inability to self-protect, Z.K. would be at risk if Mother overdosed or left drugs and paraphernalia within reach of the child.

The child's need for permanence

{¶13} Z.K. has been in foster care for a significant portion of his life. He has attained stability in the foster home, is happy and safe, and has made great strides in learning how to regulate his emotions. His counselor emphasized that consistency in parenting and discipline is critical to maintaining the child's emotional stability and curbing his aggression.

{¶14} CSB developed case plan objectives designed to give Mother the ability to provide a safe, stable, and appropriate environment for the child. Mother's objectives included: (1) participate in mental health treatment, including counseling and medication, if prescribed, (2) demonstrate the ability to meet the basic needs of herself and the child, (3) participate in parenting education, and (4) participate in substance abuse treatment.

{¶15} Mother failed to participate in mental health treatment. She claimed that she tried to set up services at Greenleaf, but her insurance would not pay, and that facility had no openings. She refused to seek counseling at another facility where the child's biological father attended. Believing that she would not regain custody of Z.K., Mother decided not to seek mental health counseling anywhere else. She testified that she would engage in counseling if Z.K. were returned to her.

{¶16} Mother was able to obtain employment during the pendency of the case. Although her physical home was appropriate, Mother was clear in her intent to maintain a relationship with her boyfriend. The CSB caseworker was unable to determine whether Mother's boyfriend was living with her, but the caseworker suspected he was. In any event, Mother's boyfriend would maintain a strong presence in the child's life if the child were returned to Mother's custody. Although Mother's boyfriend denied currently using drugs, he has a lengthy history of substance abuse. Moreover, Mother admitted that she is inclined to use drugs under the influence of her boyfriend. Accordingly, Mother's home environment remains one in which drugs and paraphernalia are likely present.

{¶17} As to parenting education, Mother has failed to participate in any services facilitated by CSB because she did not believe they were necessary. Although the child's mental health therapist agreed to work with Mother both alone and during visitations with Z.K., Mother

also failed to take advantage of those opportunities. In addition, she frequently missed visits with the child where she could develop her relationship and parenting skills with Z.K.

{¶18} The agency caseworker testified that the substance abuse objective was the most critical for Mother. Mother has struggled with substance abuse issues for more than six years. Her drugs of choice are opioids. She has participated in drug treatment programs at Community Health Center, Power Street (an intensive post-failure treatment program), Touchstone (residential treatment), and Pinnacle Treatment Services. Despite these multiple services, Mother has been unable to achieve any sustained periods of sobriety. Mother requested medically assisted drug treatment at Pinnacle. Accordingly, she was provided with a daily dose of methadone to curb her cravings and stabilize her mood and behaviors caused by the physical complications associated with chemical dependency. Although she was dosing daily, Mother nevertheless continued to test positive for other substances. At her intake, Mother only tested positive for marijuana, but the following day she tested positive for fentanyl.

{¶19} Mother continued to test positive for fentanyl on every drug screen even though she was receiving daily doses of methadone. Mother's counselor cautioned her about the risks of using other drugs while dosing, including decreased respiration, elevated heart rate, and increased harmful effects associated with the drug(s) being used. Nevertheless, Mother continued to test positive each time for fentanyl, frequently for marijuana, and occasionally for cocaine. She admitted that her ongoing association with her boyfriend who was using drugs negatively impacted her ability to attain sobriety. Mother's counselor testified that many factors interfered with Mother's ability to successfully engage in treatment, e.g., Mother's relationship problems with her family, untreated mental health issues, lack of healthy coping skills, lack of insight regarding her personal triggers, and lack of relapse prevention skills.

{¶20} Mother's drug treatment counselor testified that patients who dose with methadone are required to participate in counseling too. The counselor recommended that Mother engage in nine hours of individual and/or group counseling each week. Mother's compliance with counseling was "hit and miss" with numerous failures to attend with no notification. Three months before the permanent custody hearing, Mother was terminated from treatment at Pinnacle due to nonparticipation. Not only had Mother missed eight consecutive appointments, but her counselor had been unable to contact her for an extended period of time.

{¶21} Mother testified that she stopped attending counseling at Pinnacle because she thought the providers there were not taking her case seriously. She also admitted that she missed a lot of appointments at Pinnacle because she prioritized her job over her sobriety. Although she was not participating in substance abuse treatment at the time of the permanent custody hearing, Mother claimed that she had been clean and sober for approximately four months. She was attending AA meetings twice a week, although she did not have a sponsor. Notwithstanding Mother's claim of sobriety, the caseworker testified that Mother appeared to be under the influence of drugs while visiting with Z.K. a couple weeks before the hearing.

{¶22} Throughout the case, Mother's appearance at visitations has been inconsistent. At one point she was removed from the visitation schedule after missing six of seven visits in one month. When her visits were restored, Mother attended the first, but missed the next three. Even within the two months prior to the hearing, Mother missed some visits with the child. Although Mother cited her work schedule for some missed visits, she never requested a modification to her visitation schedule.

{¶23} CSB investigated possible relative placements for the child. All family members who were contacted either declined placement or were not approved by the agency.

Applicability of R.C. 2151.414(E)(7)-(11) factors

{¶24}  No factors listed in R.C. 2151.414(E)(7)-(11) are applicable to this case.

Conclusion

{¶25}  Based on a review of the record, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in awarding permanent custody of Z.K. to CSB.  The evidence demonstrates that the child requires a safe and stable environment that Mother cannot provide.  Mother has struggled with opiate addiction for years and has not been able to demonstrate any significant periods of sobriety despite repeated attempts at treatment.  Mother has continued to lapse into drug use and maintain a close relationship with a man who also has a long history of substance abuse.  Mother has made no effort to engage in services designed to facilitate reunification with the child.  She has prioritized other individuals and her job over visiting with Z.K. or participating in services.  She has rejected opportunities to participate in mental health treatment and parenting education because she believed those services were not necessary.

{¶26}  Z.K. has a bond with Mother and her boyfriend.  He has also developed a close bond with his foster parents who are open to adopting the child.  Z.K.'s behavior has greatly improved in the foster home due to counseling and the consistent parenting techniques utilized by the foster parents.  There is no dispute that Mother loves the child.  Even so, she has not demonstrated the commitment to the child or her own sobriety to ensure that she will be able to provide a safe, stable, and permanent home for Z.K.  Under the circumstances, the juvenile court's finding that an award of permanent custody of Z.K. is in the best interest of the child is not against the manifest weight of the evidence.  Accordingly, Mother's assignment of error is overruled.

III.

**{¶27}** Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.